IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

HEATHER U.,

                Plaintiff,

v.   Civil Action No. 3:19-CV-1320 (DEP)

ANDREW SAUL, Commissioner of
Social Security,

                Defendant.

| APPEARANCES: | OF COUNSEL: |
|---|---|
| FOR PLAINTIFF: | |
| LACHMAN, GORTON LAW FIRM<br>P.O. Box 89<br>1500 East Main Street<br>Endicott, NY 13761-0089 | PETER A. GORTON, ESQ. |
| FOR DEFENDANT: | |
| SOCIAL SECURITY ADMINISTRATION<br>Office of General Counsel<br>J.F.K. Federal Building<br>Room 625<br>Boston, Massachusetts 02203 | MICHAEL L. HENRY, ESQ. |

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## ORDER

Currently pending before the court in this action, in which plaintiff seeks judicial review of an adverse administrative determination by the Commissioner of Social Security ("Commissioner"), pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), are cross-motions for judgment on the pleadings.[1] Oral argument was conducted in connection with those motions on March 3, 2021, during a telephone conference, held on the record. At the close of argument, I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Commissioner's determination did not result from the application of proper legal principles and is not supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by the plaintiff in this appeal.

After due deliberation, and based upon the court's oral bench decision, a transcript of which is attached and incorporated herein by reference, it is hereby

---

[1] This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order once issue has been joined, an action such as this is considered procedurally, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

ORDERED, as follows:

1) Plaintiff's motion for judgment on the pleadings is GRANTED.

2) The Commissioner's determination that plaintiff was not disabled at the relevant times, and thus is not entitled to benefits under the Social Security Act, is VACATED.

3) The matter is hereby REMANDED to the Commissioner, without a directed finding of disability, for further proceedings consistent with this determination.

4) The clerk is directed to enter judgment, based upon this determination, remanding the matter to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) and closing this case.

David E. Peebles
U.S. Magistrate Judge

Dated: March 10, 2021
 Syracuse, New York

```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
HEATHER U.,
                                            Plaintiff,

-v-                                         3:19-CV-1320

COMMISSIONER OF SOCIAL SECURITY,

                                            Defendant.
------------------------------------------------------------x
```

**TRANSCRIPT OF PROCEEDINGS**
**BEFORE THE HONORABLE DAVID E. PEEBLES**
March 3, 2021
100 South Clinton Street, Syracuse, New York

For the Plaintiff:
(Appearance by telephone)

    LACHMAN & GORTON LAW OFFICE
    P.O. Box 89
    1500 East Main Street
    Endicott, New York 13761
    BY:  **PETER A. GORTON, ESQ.**

For the Defendant:
(Appearance by telephone)

    SOCIAL SECURITY ADMINISTRATION
    625 JFK Building
    15 New Sudbury Street
    Boston, Massachusetts 02203
    BY:  **MICHAEL L. HENRY, ESQ.**

*Hannah F. Cavanaugh, RPR, CRR, CSR, ACR, RCR*
*Official United States Court Reporter*
*100 South Clinton Street*
*Syracuse, New York 13261-7367*
*(315) 234-8545*

1            (The Court and all parties present by telephone.
2   Time noted: 11:21 a.m.)
3            THE COURT: Let me begin by thanking both counsel for
4   excellent and spirited presentations. This is an interesting
5   case both factually and because of the legal issue presented
6   concerning the standard that the Court must apply in this
7   circumstance.
8            Plaintiff has commenced this proceeding pursuant to
9   42, United States Code, Sections 405(g) and 1383(c)(3) to
10  challenge an adverse determination by the Commissioner of Social
11  Security finding that she was not disabled at the relevant times
12  and therefore ineligible for the benefits for which she applied.
13           The background is as follows: Plaintiff was born in
14  January of 1982. She is currently 39 years old. Plaintiff
15  stands between 5'1" and 5'2" in height and has weighed at
16  various times as little as 270 pounds and as much as 346 pounds,
17  the latter recorded on November 21, 2018. The plaintiff has
18  three children. Two children -- two of her children reside with
19  their father. Plaintiff lives in a two-story house in the
20  Binghamton, New York area with her mother and her son who in
21  March, by my calculation, will turn 20 years old.
22           Plaintiff has a GED and, while in high school,
23  attended regular classes. She attended school through the 10th
24  grade. Plaintiff has a driver's license and drives, but has no
25  vehicle. Plaintiff's stopped working in March of 2007 according

1   to the Administrative Transcript -- including at 206, 257, and
2   828 of the Administrative Transcript.  She was fired from her
3   certified nursing assistant or aide job, CNA, due to absences.
4   She has also worked in the past as a temporary employee, a
5   daycare teaching assistant, a bus monitor, a factory assembler,
6   a retail cashier, and a fast food cashier.
7              In March of 2007 after she lost her job, she was
8   involved in a motor vehicle accident causing injury to her head,
9   ribs, and knees.  Plaintiff was transported to an emergency room
10  for treatment and, according to the records, lost consciousness
11  at some point following the accident.  That appears at page 289
12  of the Administrative Transcript.
13             There are also indications in the Administrative
14  Transcript that plaintiff has had several falls over time,
15  including in May of 2013, that's at 373; February of 2015,
16  that's at 1931; December of 2015, that's at 639; and February of
17  2016, 779 and 932.
18             Physically, plaintiff suffers from lower back pain,
19  which has been characterized as degenerative disc disease or
20  DDD; cervical pain, which has also been described as DDD; left
21  knee pain, which has been described as degenerative joint
22  disease; morbid obesity; obstructive sleep apnea; diabetes; a
23  thyroid condition; asthma; headaches; and vertigo.
24             There have been several MRIs, or magnetic resonance
25  imaging testing, over time.  On June 16, 2009, at page 461,

1   there was a lumbar MRI which showed lower lumbar facet
2   arthropathy, no significant disc bulge or compromise of the
3   neuro foramina at any level.  There was a lumbar X-ray on
4   February 27, 2012, that's at page 371, that showed mild L5-S1
5   neural foraminal narrowing probably due to facet joint
6   hypertrophy.  If concern for disc herniation or nerve root
7   impingement, MRI may be helpful for further evaluation.  There
8   was a lumbar MRI performed on July 27, 2012.  That's at 442.
9   That was listed as unremarkable with no interval change.  MRI
10  testing on June 18, 2013, the result appears at 439 and 440, the
11  impression is listed as mild diffuse congenital lumbar spinal
12  canal stenosis with very limited lower lumbar discogenic and
13  facet degenerative changes and with mild right L5-S1 foraminal
14  narrowing and mild asymmetric to the right diffuse disc bulge
15  with no lumbar nerve root impingement identified.  The lumbar
16  MRI testing on August 16th -- August 31, 2016, the result
17  appears at 1017 to 1018 of the Administrative Transcript, and
18  the result is listed as unremarkable lumbar spine MRI exam, no
19  interval changes.
20          There was lumbar MRI testing performed on June 20,
21  2017, that's at 1667 and 1668, the result being mild congenital
22  central canal stenosis, no evidence of acute abnormality.
23  Lumbar MRI testing on June 5, 2018, was performed, the result
24  appears at 1727, and indicates no significant degenerative disc
25  disease, epidural lipomatosis extending from approximately

1   mid-L5 level inferiorly resulting in compression of the thecal
2   sac and cauda equina at the L5-S1 level, and partial
3   straightening of the usual lumbar lordosis can be positional or
4   secondary to pain/muscle spasm.  Cervical MRI testing was also
5   performed in November of 2016, the result appears at 1011 and
6   1012, and the indication there is a slight increase in mild
7   osteoarthritis with a small left lateral spondylotic ridge at
8   C5-C6, adenoidal hypertrophy, and post-surgical changes in the
9   posterior neck soft tissues.
10           The plaintiff has undergone several injections,
11  including October 21, 2013, that's at 523; November 18, 2013,
12  that's 528; January 28, 2014, at 534; September 19, 2014, that's
13  at 709 to 710; December 22, 2016, that's 705; and March 31,
14  2014, that's at 543.
15           She also underwent a procedure for which I will
16  mostly spell, a right L5-S1 lateral recess decompression,
17  foraminotomy using the METRx tubular technique.  That procedure
18  is described at 1950 and 1951 of the Administrative Transcript.
19  She also had removal of fatty tumors, also described as lipomas,
20  including in 2014.  That appears at 548.  She had bilateral
21  ankle surgery on May 13, 2018, that's at 1889 to 1890, performed
22  by Dr. Parker Gennett.
23           Mentally, plaintiff suffers from depression and
24  bipolar disorder.  She has been referred to CPEP with anxiety
25  and was referred to the Broome County Mental Health Clinic.  She

1   has several emergency room visits for back and neck issues,

2   including on December 6, 2015, January 26, 2016, February 21,

3   2016, July 14, 2016, July 15, 2016, and June 20, 2018.

4           Plaintiff's primary care provider is Dr. Darlene

5   Denzien, who practices with Lourdes Center for Family Health.

6   Plaintiff has seen Dr. Denzien since she was 18 years old.  She

7   has also seen Dr. Varsha Kishore, also with Lourdes Center for

8   Family Health on at least one occasion.  She has seen ANP Susan

9   Wenzinger, a pain specialist, and Dr. Khalid Sethi, a

10  neurosurgeon, who performed the procedure that I described

11  earlier.

12          Medications have been prescribed over time including,

13  but not limited to, Oxycodone, Hydrocodone, Seroquel, Lexapro,

14  Ventolin, Cymbalta, Flexeril, Toradol, Abilify, Lamictal,

15  Wellbutrin, Zoloft, Effexor, Prozac, Topamax, Depakote,

16  Fluoxetine, and an inhaler which she uses as needed for her

17  asthma.

18          Plaintiff's activities of daily living and interests

19  include the ability to shower, groom, dress, prepare meals,

20  shop, care for her pets with the help of her mother, going

21  outside daily, doing laundry, doing light housework, watching

22  television, talking on the telephone, and visiting or hanging

23  out with friends.  Plaintiff has never smoked.

24          This case has had a fairly significant procedural

25  history.  Apparently, there were prior applications by the

1  plaintiff for benefits under the Social Security Act in 2008,
2  2012, and 2014.  On July 23, 2014, she applied for Title II and
3  Title XVI benefits alleging a disability onset date of March 19,
4  2007, and claiming disability, at page 206, based on DDD,
5  depression, and macular degeneration.  A hearing was conducted
6  on March 9, 2017, by Administrative Law Judge John P. Ramos.
7  Judge Ramos issued an unfavorable decision on April 7, 2017.
8  The Social Security Administration Appeals Council subsequently
9  denied plaintiff's application for a review of that decision on
10 May 25, 2018.  An action was commenced in this court on June 28,
11 2018, it is civil action 18-CV-759, to challenge the adverse
12 determination.  That resulted in a remand on consent on
13 January 2, 2019.  On February 5, 2019, the Social Security
14 Administration Appeals Council vacated the earlier determination
15 and remanded the matter for further consideration.
16         There were two basic points raised by the Appeals
17 Council, the first related to the physical components of the RFC
18 and centered upon the analysis of opinions of Dr. Denzien and a
19 consultative examiner, Dr. Figueroa.  The second related to
20 analysis of the mental condition and plaintiff's mental
21 condition.  The focus was upon the need to assess both the
22 nature and severity of any mental impairment.
23         A subsequent hearing was conducted on July 25, 2019,
24 by ALJ Ramos.  The Administrative Law Judge issued a second
25 unfavorable opinion on August 19, 2019.  That is a final

1  determination of the agency, and there would not appear to be
2  any request for a review by the Appeals Council.  On October 28,
3  2019, this action was commenced.
4        In his second decision, ALJ Ramos applied the
5  familiar five-step sequential test for determining disability.
6  At step one, he concluded that plaintiff had not engaged in
7  substantial gainful activity since March 19, 2007.  He noted at
8  the outset, I should say, that plaintiff's insured status
9  appears to have expired on June 30, 2010.
10       At step two, ALJ Ramos concluded that plaintiff
11 suffers from severe impairments that impose more than minimal
12 limitations on her ability to perform basic work functions,
13 including morbid obesity, degenerative joint disease of the left
14 knee, degenerative disc disease of the cervical spine, and
15 degenerative disc disease of the lumbosacral spine.  He went
16 through an analysis and concluded that there were no severe
17 mental impairments suffered by the plaintiff.
18       The ALJ next concluded that plaintiff retains the
19 residual functional capacity to perform sedentary work, except
20 that she is limited to only occasional lifting or carrying up to
21 ten pounds.  In other words, she is not capable of frequently
22 lifting or carrying up to ten pounds and only occasionally
23 lifting or carrying of that weight.  The Administrative Law
24 Judge explained that limitation as being based upon an
25 inconsistency in the opinions of Dr. Figueroa.

1       The Administrative Law Judge, at step four, concluded
2  that plaintiff had no past relevant work and proceeded to step
3  five.
4       At step five, he first noted that if plaintiff were
5  capable of performing a full range of sedentary work, a finding
6  of no disability would be compelled by the Medical-Vocational
7  Guidelines set forth in the regulations and specifically Rule
8  201.27.  With the aid of a vocational expert, the Administrative
9  Law Judge concluded that plaintiff is capable of performing
10 available work in the national economy and identified three
11 representative positions, including as a button -- I can't read
12 my notes -- a button reclaimer, an election clerk, and a
13 surveillance system monitor.
14      Oh, I did skip step three.  At step three, the
15 Administrative Law Judge concluded that plaintiff's conditions
16 do not meet or medically equal any of the listed presumptively
17 disabling conditions set forth in the Commissioner's
18 regulations.  He specifically considered listings 1.02 and 1.04.
19      The Court's task in this case is to determine whether
20 the resulting determination was the product of correct legal
21 principles and is supported by substantial evidence.
22 Substantial evidence is defined as such relevant evidence as a
23 reasonable mind would accept as sufficient to support a
24 conclusion.
25      In this case, plaintiff raises five basic

1  contentions.  First, he -- she contends that the Administrative

2  Law Judge improperly rejected the opinions of Dr. Denzien and

3  Dr. Kishore and Nurse Practitioner Wenzinger, all of which

4  opined that plaintiff would need to change positions and claims

5  that the explanation given was not -- did not meet the

6  overwhelmingly compelling reasons standard.  Secondly, she

7  challenges the failure to give controlling weight to the

8  opinions of Dr. Denzien who is, by all accounts, a treating

9  source.  Thirdly, plaintiff contends that the ALJ failed to

10 properly assess opinions in the record concerning how often

11 plaintiff would be off task and absent from work without excuse.

12 And fourth, the plaintiff challenges any failure to include any

13 limitations in the RFC related to her mental condition.  And

14 fifth, as kind of a derivative argument, she challenges the step

15 five determination as being based on a flawed hypothetical based

16 on an erroneous residual functional capacity finding.

17         Addressing first the sit/stand option argument, there

18 are several medical opinions in the record that speak to that.

19 There is one from MSN Susan Wenzinger dated June 19, 2019.  It

20 appears at 1983 to 1984.  It indicates that in her best

21 estimate, plaintiff would need to change positions approximately

22 every 15 to 30 minutes.  That doctor -- MSN Wenzinger, of

23 course, is not an acceptable medical source under the

24 regulations, but nonetheless, her opinion is entitled to

25 consideration.

1              Dr. Darlene Denzien has issued several opinions, all
2    of which appear to bear the date February 3, 2017, and indicate
3    that plaintiff would need to change positions every 15 minutes.
4    Those appear at 1898, 567, and 818 of the Administrative
5    Transcript.
6              The last opinion that speaks to that is from
7    Dr. Varsha Kishore.  It appears at 895 -- 894 through 896, and
8    it appears to endorse the opinion of Dr. Denzien.  Dr. Kishore's
9    opinion was rejected by the Administrative Law Judge because it
10   appeared that he or she saw the plaintiff only on one occasion.
11   That's at 1128.
12             More concerning is the fact that Dr. Denzien's
13   opinion is rejected at page 1128 and 1129.  There's explanation
14   as to why other parts of the opinion of Dr. Denzien are
15   rejected, but no explanation as to why the sit/stand option
16   portion is rejected.
17             The -- MSN Wenzinger's opinion is rejected at 1127
18   and 1128.  Again, no explanation as to why.
19             The -- precisely why those were rejected, I suppose
20   it could be argued that the rejection comes in the catch-all
21   portion of the opinions that appear at page 1159.  Furthermore,
22   the disabling portion of the opinion by Dr. Denzien and Dr.
23   Kishore is inconsistent with the claimant's reported activities,
24   which include being able to perform many of her activities of
25   daily living and care for a mentally disabled child.  It's

1  difficult for -- to imagine why the ability to -- the need to

2  change positions every 15 or 30 minutes would be -- would be

3  undermined by activities of daily living that were described

4  earlier.

5           In any event, this -- this case, of course, falls

6  under the former regulations that were amended in March of 2017

7  under 20 C.F.R. Section 404.1527 and Section 416.927.  Dr.

8  Denzien's opinions were entitled to controlling weight if

9  supported by substantial evidence and the Administrative Law

10 Judge, in rejecting those opinions, was duty bound to explain

11 the rejection, explain the weight given, and address the

12 so-called *Burgess* factors.

13          In any event, I agree with plaintiff's counsel that

14 what -- what really is at issue here is the rejection of

15 uncontroverted medical opinions.  The only other medical

16 opinion, of course, that speaks to the plaintiff's physical

17 abilities is that of Dr. Rita Figueroa, that appears at 548 to

18 552 of the Administrative Transcript, and doesn't speak to the

19 need to sit or stand in either -- either way.  But

20 significantly, it does indicate significant limitations related

21 to plaintiff's back, including marked limitations for activities

22 requiring bending, lifting, carrying, and standing due to the

23 bulging in her back, so the -- and moderate limitations for

24 sitting, so it's hard for me to conclude that that is a contrary

25 medical opinion since it was silent on the issue.

1  So the issue really is, again, what is required in
2  order to overcome, in a lay opinion, uncontroverted medical
3  opinions.  I appreciate that the Commissioner has asked that the
4  Court determine that the overwhelmingly compelling standard has
5  been abrogated and, if not, it should be.  That's a matter for
6  the Second Circuit Court of Appeals and if were I sitting on
7  that court, I would have a great deal of fun winding my way
8  through how that standard evolved.
9  The fact remains, however, that as recently as a year
10 ago tomorrow, in *Riccobono v. Saul*, 796 F. App'x 49, on March 4,
11 2020, the Second Circuit reiterated the standard.  In that case,
12 the ALJ had discounted medical opinions and substituted her own
13 judgment to interpret the raw medical data and the Court noted,
14 quote, as we previously have held, a circumstantial critique by
15 non-physicians, however thorough or responsible, must be
16 overwhelmingly compelling in order to overcome a medical
17 opinion, citing *Wagner v. Secretary of Health and Human*
18 *Services*, 906 F.2d 856862, Second Circuit, 1990.
19 In this case, there were literally no reasons cited.
20 I have, in many cases, as I think both counsel in this case
21 know, found that the overwhelmingly compelling standard has been
22 met.  I can't in this case because there is literally no
23 explanation given as to why the sit/stand opinions of Wenzinger,
24 Denzien, and Kishore have been rejected.  Without that, I cannot
25 conclude that the -- nor can the ALJ conclude that treatment

1    notes justify the decision to discount uncontradicted opinions,
2    *Gavazzi v. Berryhill*, 687 F. App'x 98 from April 19, 2017.
3              So the Administrative Law Judge, in rejecting Dr.
4    Denzien's opinion and Nurse Practitioner Wenzinger's opinion,
5    focused on certain things in general, mostly -- many of which
6    related to the mental aspect of the opinion and focused on
7    medication, side effects, no testing regarding concentration and
8    attention, the speculative nature of the off task and absence
9    portion of the opinions, the need to rest can be accommodated by
10   normal breaks, and activities of daily living.  I don't find
11   that any of those explanations comes close to meeting the
12   overwhelmingly compelling standard in this case, so I find
13   error.  The question is:  Is the error harmless.  And the answer
14   is, it depends on the extent of the erosion of the job base.
15   Based on the need to alternate sitting and standing, it depends.
16             Social Security Ruling 96-9p addresses this issue and
17   states, the extent of the erosion will depend on the facts in
18   the case record, such as the frequency of the need to alternate
19   sitting and standing and the length of time needed to stand.
20   The RFC assessment must be specific as to the frequency of the
21   individual's need to alternate sitting and standing.  It may be
22   especially useful in these situations to consult a vocational
23   resource in order to determine whether the individual is able to
24   make an adjustment to other work.
25             And that thought is echoed in Social Security Ruling

1   83-12, which states -- addressing, again, the need to alternate
2   sitting and standing, in cases of unusual limitation of ability
3   to sit or stand, a VS should be consulted to clarify the
4   implications for the occupational base.
5           So in conclusion, I don't find that correct legal
6   principles were applied and that the -- that the determination
7   of the Commissioner in this case is supported by substantial
8   evidence.  I'm not going to address the remaining issues in the
9   case, and specifically whether the requirements of the treating
10  source rule and *Estrella* have been met with the rejection of Dr.
11  Denzien's opinions because I find error in rejecting the
12  unanimous opinions of medical sources without overwhelmingly
13  compelling rationale stated by the Administrative Law Judge, so
14  I will grant judgment on the pleadings to the plaintiff.
15  Despite the lengthy history of this case, I don't find a basis
16  to direct a finding of disability and remand for calculation of
17  benefits.  I think the case should be remanded for further
18  consideration consistent with this opinion.
19          Thank you both for excellent presentations.  Please
20  stay safe.
21          MR. GORTON:  Thank you, your Honor.
22          MR. HENRY:  Thank you, your Honor.
23          (Time noted:  11:51 a.m.)
24
25

```
                    CERTIFICATE OF OFFICIAL REPORTER



          I, HANNAH F. CAVANAUGH, RPR, CRR, CSR, ACR, RCR,
Official U.S. Court Reporter, in and for the United States
District Court for the Northern District of New York, DO HEREBY
CERTIFY that pursuant to Section 753, Title 28, United States
Code, that the foregoing is a true and correct transcript of the
stenographically reported proceedings held in the above-entitled
matter and that the transcript page format is in conformance
with the regulations of the Judicial Conference of the United
States.

              Dated this 8th day of March, 2021.


              s/ Hannah F. Cavanaugh_____
              HANNAH F. CAVANAUGH, RPR, CRR, CSR, ACR, RCR
              Official U.S. Court Reporter
```